IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 06-102-11 (JDB) |
| v. | |
| CHRISTOPHER SEALEY,<br>Also known as Christopher Bourne, also<br>Known as Boyie | |
| Defendant | |

## MOTION TO SUPPRESS STATEMENTS

The Defendant, Christopher Sealey, by and through his attorneys, Patrick M. Donahue and The Donahue Law Firm, moves this Court to suppress as evidence against him all statements, whether oral or written, made by the defendant to arresting officers in Trinidad, and the FBI, on August 8, 2006. In support of this Motion the defendant submits the attached memorandum of Points and Authorities:

WHEREFORE, for the reasons stated in this Motion, those offered in the Memorandum of Points and Authorities attached hereto, and such other reasons as may be adduced at the hearing on this Motion, the Defendant respectfully moves this Court to suppress his statements.

          Respectfully submitted,

          **THE DONAHUE LAW FIRM**

By:   /s/_____
       Patrick M. Donahue, Esq.
       Bar No. 358184
       18 West Street
       Annapolis, Maryland 21401
       Telephone: 410-280-2023
       Attorney for Defendant, Christopher Sealey

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of July, 2008, a copy of the forgoing Motion to Suppress Statements and Memorandum of Points and Authorities was served on all parties by the electronic filing system of the United States District Court for the District of Columbia.

/s/_____
Patrick M. Donahue

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 06-102-11 (JDB) |
| v. | |
| CHRISTOPHER SEALEY,<br>Also known as Christopher Bourne, also<br>Known as Boyie | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO SUPRESS STATEMENTS**

## I. Facts[1]

The Defendant, Christopher Sealey, was arrested in Trinidad on or about August 1, 2006. During the first week of incarceration his family was denied access to him and he was unable to request that his family secure a lawyer. Subsequently, on August 7, 2006, he was interrogated by Trinidadian authorities. In response to questioning he advised them he had no involvement in the murder/kidnapping of the victim. After a lengthy interrogation wherein Mr. Sealey denied any involvement he was advised he would be charged with murder and kidnapping. He was then returned to his cell and denied visits from family. The following day, August 8, 2006, in the early evening, he was again taken out of his cell for a second interview. He again advised Trinidadian authorities he was not involved in the kidnapping and murder of the victim. He also asked to see a lawyer or that his family be told to get a lawyer; instead, police summoned his father, a known drug abuser. At some point during the interrogation that followed the FBI joined the interrogation. It went late into the night. Neither Mr. Sealey nor his father could read or write. At no time did he agree to waive his

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

---

[1] All facts alleged are upon information and belief.

3

right to counsel, in fact, he asked for counsel. Ultimately, late in the evening, he was advised that if he and his father signed his father could leave and he would be released the next day. He signed and was charged and has been incarcerated since that time.

## II. Miranda

Given that the FBI was present during much of the second interrogation Mr. Sealey asserts he should be afforded rights under Miranda. In Miranda v. Arizona 384 U.S. 436 (1965), the United States Supreme Court created a set of procedural safeguards designed to ensure that a suspect who is subject to custodial interrogation is adequately apprised of his Fifth and Sixth Amendment rights. Miranda, supra, prohibits the prosecution's use of exculpatory or inculpatory statements stemming from custodial interrogation unless (1) prior to any questioning the accused has been effectively warned that (a) the accused has a right to silence, and that if any statement is made it may be used as evidence against the accused; (b) the accused has the right to presence of an attorney, and if the accused cannot afford an attorney one will be appointed prior to questioning if the accused so desires, and (2) that the accused has knowingly and intelligently waived the rights indicated by the warnings. In addition, Miranda held that if the interrogation continues without the presence of an attorney, and a statement is taken, a heavy burden rests with the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. Miranda 384 U.S. at 475.

In the instant case Mr. Sealey, who was under arrest, was not advised of his rights under Miranda until after arrest and custodial interrogation. He did not execute the waiver of rights card. Thus, the defendant submits, in view of the circumstances, he was not effectively advised of his Fifth and Sixth Amendment rights, did not understand those rights, and did not

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

4

knowingly and intelligently waive those rights; in fact, Mr. Sealey requested that his family be contacted so they could obtain for him an attorney.

### III. Involuntariness

A second requirement that must be met before a statement may be introduced into evidence by government is that the statement must be shown to have been voluntarily made. In fact, a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon involuntary confession. Jackson v. Denno, 378 U.S. 368, 376 (1964). The burden is on the Government to demonstrate that a statement was voluntarily made by the defendant, Lego v. Twomey, 404 U.S. 477 (1972). To make a showing of voluntariness, "it must be shown that in fact the confessor had a free will and intellect whether or not the detective had any reason to doubt its presence or suspect its absence." Pea v. United States, 130 U.S.App.D.C. 66, 71, F.2d 627, 632 (1969). In its determination, the Court must consider the totality of the circumstances surrounding the confession. Clewis v. Texas, 386 U.S. 707, 708 (1976).

In the instant case, the defendant, was held for days before his two interrogations. He was not given the opportunity to waive his rights in writing and in fact requested counsel. Mr. Sealey could neither read nor write.[2] After days in custody and hours of interrogation he signed a statement hand written by arresting officers. These carefully orchestrated circumstances had a coercive impact resulting in a statement, written by the arresting officer and not read by Mr. Sealey. Therefore, any statements he allegedly made were not voluntary; rather, coerced by design and not really his statement.

The Donahue Law Firm
18 West Street
Annapolis, MD 21401
(410) 280-2023

---

[2] Mr. Sealey has what amounts to a fourth grade education.

5

## IV. Conclusion

Accordingly, all statements should be suppressed.

Respectfully submitted,

The Donahue Law Firm


/s/_____
Patrick M. Donahue, Esq.
Bar No. 358184
18 West Street
Annapolis, Maryland  21401
(410) 280-2023
Attorneys for Defendant, Christopher Sealey