IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § § § | |
| - vs - § § § | CRIMINAL No.  06-102-02 (JDB) |
| **WAYNE PIERRE,** § **ANDERSON STRAKER**, *el al.* § Defendants. § § | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT PIERRE'S AND DEFENDANT STRAKER'S MOTIONS IN LIMINE TO PRECLUDE CO-CONSPIRATORS' STATEMENTS

The United States of America ("United States" or "Government") opposes defendant Wayne Pierre's Motion to Preclude Hearsay From Alleged Co-Conspirators [Document #196] ("Mr. Pierre's Motion") and defendant Anderson Straker's Motion to Adopt and Join Motion in Limine to Preclude Hearsay From Alleged Co-Conspirators [Document #197] ("Mr. Straker's Motion"), because, as set forth below, both Motions are without merit and should, therefore, be denied.

*Nature of the Case*

Defendant Anderson Straker ("Mr. Straker" or "defendant") is one of twelve Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and Hostage Taking Resulting in Death, both charges in violation of 18 U.S.C. § 1203(a). According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Straker and his co-conspirators, embarked upon a common plan to obtain the money of an American citizen, Balram

Maharaj, who was a visitor to the Island of Trinidad and who had relatives there. The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to hold Dinesh for ransom. However, the conspirators later discarded the initial plan and determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted. and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators. Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

### The Allegations of Defendant Pierre's Motion

In his Motion [Document #196], Mr. Pierre seeks to preclude from evidence at trial:

> [A]ny out-of-court statements purportedly made by any alleged indited or unindicted co-conspirators as their introduction would violate Mr. Pierre's rights under the Confrontation Clause of the United States Constitution. In particular, counsel submits that statements attributed to any alleged and nontestifying coconspirator by a witness testifying should be excluded as unreliable and testimonial hearsay as such statements are obtained by the government through questioning of the witness after arrest and prior to trial for the purposes of litigation in this matter. With that context, what a witness claims someone else, who is not called as a witness by the government, says, is rank hearsay and also "testimonial" under the *Crawford* analysis.

[Pierre Motion, page 1] Alternatively, Mr. Pierre's Motion requests a pretrial hearing on "all

conconspiratorial statements that the government seeks to introduce. [Pierre Motion, pages 1-2] Finally, Mr. Pierre's Motion seeks an order directing that the Government not "mention or allude to any such out-of-court statements in the presence of any juror, unless and until this court shall order otherwise." [Pierre Motion, page 2]

### Defendant Straker's Motion to Join Defendant Pierre's Motion

In his 1-page Motion [Document #197], Mr. Straker seeks leave to join Mr. Pierre's Motion and says that Mr. Straker "believes that Mr. Pierre's Motion in Limine applies with equal force to him and requests leave to adopt and join in the Motion in Limine to Preclude Hearsay from Alleged Coconspirators." [Straker Motion, page 1][1]

For the reasons set forth below, both Mr. Pierre's Motion and Mr. Straker's Motion are without merit and should be, in all things, denied.

## DEFENDANTS' MOTIONS ARE WITHOUT PROPER FOUNDATION OR MERIT AND SHOULD BE DENIED

### Authority for Admission of Co-Conspirator Statements

Federal Rule of Evidence 801(d)(2)(E) provides that statements of co-conspirators made in furtherance of the conspiracy are not hearsay. To admit such statements, the Government need only prove by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statement was made in furtherance of the conspiracy.[2] The

---

[1] The Government has no objection to Mr. Straker being permitted to adopt and join the Motion by Mr. Pierre.

[2] Some examples of such statements include those that enhance a co-conspirator's usefulness to the conspiracy, invite participation in further stages of the conspiracy, keep a co-conspirator informed about the progress of the conspiracy, and motivate a co-conspirator to continue to participate, and provide background information on key members of the conspiracy. United States v. Carson, 455 F.3d 336, 366-67 (D.C. Cir. 2006)(*quoting* United States v.

Supreme Court has held that (1) the Government need only prove these preliminary facts by a preponderance of the evidence and (2) the co-conspirator's statements themselves may be considered as part of the proof of, and the participation of the declarant in, the conspiracy. Bourjaily v. United States, 483 U.S. 171, 176-181 (1987). The District of Columbia Circuit additionally requires that there be independent evidence of the conspiracy apart from the statement, although the content of the statement itself can also be considered in determining whether such independent evidence exists. United States v. Gatling, 96 F.3d 1511, 1520 (D.C. Cir. 1996); United States v. Beckham, 968 F.2d 47, 50-51 (D.C. Cir. 1992); United States v. Washington, 952 F.2d 1402, 1407 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 1009 (1992).

There is no requirement that the Government prove the preliminary facts of the conspiracy prior to the disclosure of the co-conspirator's statement at trial. *See, e.g.,* United States v. Carson, 455 F.3d 336, 365 n.26 (D.C. Cir. 2006). Courts have long admitted such statements on a conditional basis subject to proof of the conspiracy later during the trial.[3] "As a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the [trial] court may admit declarations of co-conspirators subject to connection." United States v. Gannt, 617 F.2d 831, 845 (D.C. Cir 1980), *abrogated on other grounds* by In Re Sealed Case, 99 F.3d 1175, 1178 (D.C. Cir. 1996). The *Gannt* court went on to state that "[i]f substantial

---

Edmond, 52 F.3d 1080, 1110-11 (D.C. Cir. 1995); *and see* United States v. Tarantino, 846 F. 2d 1384, 1412 (D.C. Cir. 1988).

[3] In this case, defendants have more information than might obtain. This is so, because the defendants have been provided with the transcript of the 2007 trial in the related case of United States v. David Suchit. The transcript of that trial contains the testimony of two of the co-conspirators (Russell Jerry Joseph and Winston Gittens), which sets forth much of the conspiracy and some of the co-conspirators' statements.

evidence of the connection has not been produced at the close of the government's case, the court will instruct the jury to disregard the hearsay statements, or the court may grand a mistrial. Id. at 845. See also United States v. Jackson, 627 F.2d 1198, 1218 (D.C. Cir. 1980) (trial courts are not required to hold "mini-trials" on the conspiracy issue before the conditional admission of a co-conspirator's statement); United States v. Monaco, 702 F.2d 860, 877 n.29 (11th Cir. 1983) (court may admit statements subject to the Government's "connecting them up"); United States v. Graham, 548 F.2d 1302, 1308-09 (8th Cir. 1977) (requiring proof of conspiracy first would compel fragmented presentation of evidence). In the instant case, the government does not plan to rely solely upon co-conspirator declarations to establish the conspiracy, but will introduce independent evidence of the conspiracy apart from the statements.

A conspiracy "mini-trial" is not only unnecessary, it would also significantly prolong the proceedings as a whole, since any pretrial ruling on admissibility would eventually have to be revisited at trial. See United States v. Pepe, 747 F.2d 632, 653 (11th Cir. 1984) (pretrial ruling in a conspiracy case "is not dispositive on the issue of hearsay, however, because the admissibility of testimony is, ultimately, a trial ruling"). Holding such a pretrial hearing in this case would accomplish nothing more than a complete preview of the government's case against the defendants. See United States v. Ianniello, 621 F.Supp. 1455, 1478 (S.D.N.Y. 1985).

When confronted with this issue, District Courts in this Circuit have rejected motions from defendants requesting such pre-trial hearings regarding the admissibility co-conspirators' statements. In United States v. Hsin-Yung, 97 F. Supp.2d 24, 37 (D.D.C. 2000), the Court stated that "[g]iven the myriad of difficulties that surround the availability of witnesses, it is just impractical in many cases for a court to comply strictly with the preferred order of proof.... As a

concession to such practical impediments that arise during trial, the court is vested with considerable discretion to admit particular items of evidence 'subject to connection.'" Id. at 37 (quoting *Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980)). The *Hsin-Yung* court went on to deny the defendant's motion to hold such a hearing, stating that "having a pretrial hearing essentially would create a time-consuming mini-trial before the trial. The Court therefore denies the motion and will allow the Government to prove admissibility at trial subject to connection." Id. at 37.

Similarly, the District Court in United States v. Cooper, 91 F. Supp.2d 60, 78 (D.D.C. 2000), declined to conduct a pre-trial hearing. Instead, as is the common practice in this Circuit, and completely appropriate here, this Court should admit declarations of co-conspirators subject to connection. "If substantial evidence of the connection has not been produced at the close of the government's case the court will instruct the jury to disregard the hearsay statements." *Gannt*, 617 F.2d at 845.

As a result, the Court need not, and should not, conduct a hearing prior to trial to determine the admissibility of the co-conspirators' statements.

### The Confrontation Clause/*Crawford*

In his Motion, Mr. Pierre misapprehends both the spirit and the letter of Crawford v. Washington, 541 U.S. 36 (2004). In fact, far from supporting Mr. Pierre's Confrontation Clause argument, *Crawford* specifically notes that "statements in furtherance of a conspiracy" are examples of "statements that by their nature [are] not testimonial" and are therefore admissible at trial. 541 at 56; *and see* United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006). This is so, among other possible reasons, because statements in furtherance of a conspiracy are generally not offered for the truth of the matter asserted, but rather offered merely for the fact that they

were said, and hence are not hearsay. In United States v. Faulkner, *supra*, the Tenth Circuit noted:

> One thing that is clear from *Crawford* is that the [Confrontation] Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement. *Crawford* states: "The Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 60 n. 9. And the only nontestimonial statements that it considers to be possible subjects of the Clause are "nontestimonial *hearsay*." *Id.* at 68 (emphasis added); *see id.* at 60 (to extent Confrontation Clause covers more than testimonial statements, its subject is hearsay). In other words, the Clause restricts only statements meeting the traditional definition of hearsay. *See generally* Fed.R.Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.")
>
> At Appellants' trial the only statements by [co-conspirator] Hargrove offered into evidence were not offered for the truth of any assertions he made. This is hardly unusual in conspiracy cases, but the point is often, even generally, overlooked. Statements by coconspirators are commonly introduced at trial simply because the statements themselves are part of the plotting to commit a crime. The coconspirator is not asserting the truth of a historical event. Rather, he is directing the conduct of a fellow conspirator or agreeing to follow directions. Even statements about historical events-such as an assertion that the targeted victim had shot a member of the gang plotting revenge-typically are not offered for their truth; whether the target actually committed the alleged offense is irrelevant to the guilt of the plotters.

*Id.* at 1226-27;[4] *accord* United States v. Larson, 460 F.3d 1200, 1212-13 (9th Cir. 2006), *cert. denied*, 128 S.Ct. 1647 (2008); United States v. Carson, 455 F.3d 336, 365 (D.C. Cir. 2006), *rehearing en banc denied* (Oct. 23, 2006), *cert. denied*, 127 S.Ct. 1351 (2007) ("*Crawford* does

---

[4] In *Faulkner*, the Tenth Circuit noted that coconspirator statements are sometimes hearsay, and sometimes not. To illuminate the distinction, the *Faulkner* Court referred to the trial of Thomas Hardy in 1794, in which Chief Justice Eyre offered the simplest illustration of this point: If three persons are prosecuted for conspiracy, the conversation in which they plan the venture and agree to participate is not hearsay, and the words spoken by each may be proved against all, but a later statement by one of them admitting his involvement would be hearsay if offered against the others to prove that point. Id. at 1227.

not undermine *Bourjaily*. Coconspirator statements in furtherance of a conspiracy are not typically the type that fall within the definition of "testimonial."); United States v. Hendricks, 395 F.3d 173, 183-84 (3d Cir. 2005) (reversing District Court's exclusion of evidence); United States v. Sanchez-Berious, 424 F.3d 65, 75 (1st Cir. 2005), *cert. denied*, 546 U.S. 1125 (2006); United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004), *cert. denied*, 543 U.S. 1079 (2005); United States v. Lee, 374 F.3d 637, 644 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005).

As a result, neither the Confrontation Clause nor *Crawford* countenance the preclusion of the co-conspirator's statements at trial, which were made in the course and furtherance of the conspiracy.

Because neither the Confrontation Clause, nor *Crawford*, require the exclusion of the co-conspirators' statements at trial, and because Federal Rule of Evidence 801(d)(2)(E) specifically authorizes the admission at trial of co-conspirator's statements as non-hearsay, and because the Government will establish at trial the predicate for the admission of the co-conspirators' statements herein, the Motions of Mr. Pierre and Mr. Straker are without merit and should be denied.

WHEREFORE, for each of the independent reasons set forth above, defendant Wayne Pierre's Motion to Preclude Hearsay From Alleged Co-Conspirators [Document #196] and defendant Anderson Straker's Motion to Adopt and Join Motion in Limine to Preclude Hearsay

From Alleged Co-Conspirators [Document #197] are each, independently and in combination, without merit, they should be, in all things, denied.

                         Respectfully submitted,

                         JEFFREY A. TAYLOR (D.C. Bar No. 498610)
                         United States Attorney

                         /S/

By: _____
       BRUCE R. HEGYI (D.C. Bar No. 422741)
       Assistant United States Attorney
       Federal Major Crimes Section
       555 Fourth Street, N.W., Room 4848
       Washington, D.C. 20530
       (202) 305-9637
       (202) 353-9414 (fax)
       www.bruce.hegyi@usdoj.gov

       JEANNE M. HAUCH (D.C. Bar No. 426585)
       Assistant United States Attorney
       National Security Section
       555 Fourth Street, N.W., 11th Floor
       Washington, D.C. 20530
       (202) 514-5776

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 6th day of August, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

/s/

Bruce R. Hegyi