IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § § § | |
| - vs - | § § § | CRIMINAL No.   06-102-02 (JDB) |
| **ANDERSON STRAKER,** **CHRISTOPHER SEALEY,** **also known as Christopher Boyd,** **also known as Boyie,** **WAYNE PIERRE,** *et al.* | § § § § § § | |
| Defendants | § § § | |

## GOVERNMENT'S OPPOSITION TO STRAKER, SEALEY, AND PIERRE MOTIONS FOR SEVERANCE OF DEFENDANTS

The United States of America ("United States" or "Government") hereby opposes

defendant Anderson Straker's First Motion to Sever Defendants ("Straker Motion") [Document

#200], defendant Christopher Sealey's Motion to Sever Defendants ("Sealey Motion")

[Document #224], and defendant Wayne Pierre's Motion to Sever Defendant ("Pierre Motion")

[Document #192] and Supplemental Motion to Sever Defendant ("Pierre Supplemental Motion")

[Document #198] because, as set forth below, they are without merit.

### *Nature of the Case*

Defendants Anderson Straker ("Mr.  Straker"), Christopher Sealey ("Mr. Sealey"), and

Wayne Pierre ("Mr. Pierre") are three of twelve Trinidadian nationals who have been indicted in

the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and

Hostage Taking Resulting in Death, both charges in violation of 18 U.S.C. § 1203(a). According

to the allegations of the superseding indictment, beginning on or about February 1, 2005 and

ending on or about April 15, 2005, Mr. Straker, Mr. Pierre, Mr. Sealey, and their co-conspirators

embarked upon a common plan to obtain the money of an American citizen, Balram Maharaj,

who was a visitor to the country of Trinidad & Tobago [hereinafter "Trinidad"] and who had

relatives there. The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son,

Dinesh Maharaj, and to hold Dinesh for ransom. The conspirators later discarded the initial plan,

determined to kidnap Balram Maharaj, did so, and sought to obtain a ransom of Mr. Maharaj's

money, from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their

plan, Balram Maharaj was abducted, and a ransom of $3,000,000 Trinidad (approximately

$500,000 US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a

mountainous jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the

remote hideout, languishing at the hands of the conspirators. By April 15, 2005, the ransom

demands had ceased. Following Mr. Maharaj's death, members of the conspiracy dismembered

his body and buried his body parts at another remote location in the mountainous jungle. In

January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a

mountainous jungle region in Trinidad.

In this case, each of these defendants played substantial roles in both the planning and

execution of the hostage taking for ransom. All three sought to profit financially from the

criminal venture. In short, the roles of the defendants are as follows. Mr. Straker was one of the

instigators. He recruited defendant Leon Nurse and others to organize the hostage taking and to

recruit other necessary participants. Straker supervised ransom negotiations and on one occasion

went to the hideout where the victim was being held and interrogated the victim about financial and personal information, in an effort to obtain a proof of life recording, in furtherance of the ransom negotiations. Mr. Sealey attended planning meetings and then abducted the victim at gunpoint from the Samaan Tree Bar. Along with conspirator Kevin Nixon, who also attended planning meetings, Mr. Sealey forced the victim into a vehicle and then turned the victim over to conspirators Clark and Demerieux, whose job it was to hold and guard the victim during the course of the ransom negotiations. As one of the leaders, Mr. Pierre was recruited into the conspiracy by conspirator Jason Percival, his partner in previous kidnapings. Mr. Pierre planned the details of the abduction of the victim, supplied the guns and was present in the area when the abduction took place. He also supervised ransom negotiations and connections with those guarding the victim. Along with others, Mr. Pierre played a role in the decision to keep the victim hostage despite his failing health and imminent death. After the victim died, he directed and participated in the plan to dispose of the body.

### The Allegations of Defendants' Motions

### Mr. Straker's Motion

In his Motion, Mr. Straker asks for severance of his trial from that of his co-defendants on two grounds. Mr. Straker first argues that he will be unfairly prejudiced by the Government's introduction of "other crimes" evidence pursuant to Rule 404(b) of the Federal Rules of Evidence because the Government's Rule 404(b) evidence will implicate all co-defendants except him. [Straker Motion at 3-4.] Second, Mr. Straker claims that the weight of the evidence to be offered at trial is far greater with respect to his co-defendants and thus he will be prejudiced by the "spillover" effect. [*Id.* at 5-6.] This claim is legally indistinguishable from the first in that they

are both based on the general idea that the evidence against his co-defendants is more substantial than that against Mr. Straker.

### Mr. Sealey's Motion

The arguments set forth in Mr. Sealey's Motion are virtually identical to those of Mr. Straker. Mr. Sealey contends that the evidence against him is "sparse," and, as a result, "there exists a great disparity in the weight of evidence against him and co-defendants." [Sealey Motion at 5.] Mr. Sealey claims to be particularly concerned that while the evidence may prove the guilt of his co-defendants, the evidence against him is "far less substantial and the danger persists that the guilt of the others will 'rub off' on him." [*Id.*] Citing this alleged disparity and the "brutal nature and substance" of certain Rule 404(b) evidence that may be introduced at trial, Mr. Sealey concludes that "a joint trial has the potential of and likely would be so prejudicial that no jury could make a reliable judgment about Mr. Sealey's guilt or innocence." [*Id.* at 6.]

### Mr. Pierre's Motion

Mr. Pierre asserts the same "spillover" arguments for severance proposed by Mr. Straker and Mr. Sealey and also raises an additional basis for severance. Going beyond this "spillover" argument, Mr. Pierre claims that severance is appropriate due to the Government's intended introduction into evidence of statements made by other co-defendants that are "facially incriminating" to Mr. Pierre. He contends that "[a]dmission of a codefendant's confession at a joint trial where the codefendant does not testify and therefore cannot be cross-examined, violates a defendant's right of confrontation under the Sixth Amendment to the U.S. Constitution." [Pierre Motion at 3.] More specifically, Mr. Pierre explains that Mr. Sealey's statement will demonstrate "defendant Pierre's knowledge, intent, and participation" in the

-4-

kidnapping of Balram Maharaj, and that Mr. Straker's statement "facially incriminate[s]

defendant Pierre when linked to additional evidence in the conspiracy." [*Id.*] Furthermore, in his

Supplemental Motion, Mr. Pierre contends that "Mr. Nixon's statement is incriminatory of

[him]." [Pierre Supplemental Motion at 2.] Because he will be unable to cross-examine any of

these three co-defendants, Mr. Pierre posits that his Sixth Amendment rights will be violated.

[*Id.*; Pierre Motion at 3.] Finally, Mr. Pierre notes that the statements cannot be admitted as

having been "made in furtherance of any alleged conspiracy" since they were made while the co-

defendants were in custody. [Pierre Motion at 4.] Mr. Pierre thus concludes that severance from

his co-defendants is the proper remedy. [*Id.* at 5; Pierre Supplemental Motion at 3.]

      For the reasons set forth below, the severance motions filed by Mr. Straker, Mr. Sealey,

and Mr. Pierre are without merit as they fail to make the minimum requisite showing to support

the relief they seek.

## DEFENDANTS' MOTIONS ARE WITHOUT PROPER FOUNDATION OR MERIT AND SHOULD BE DENIED

### Allegations Related to "Disparity of Evidence" Claims and Rule 404(b) Evidence

      The Supreme Court has repeatedly recognized that "[t]here is a preference in the federal

system for joint trials of defendants who are indicted together. Joint trials play a vital role in the

criminal justice system. They promote efficiency and serve the interests of justice by avoiding

the scandal and inequity of inconsistent verdicts." *United States v. Zafiro*, 506 U.S. 534, 537

(1993) (internal quotations and citations omitted); *see* Fed. R. Crim. P. 8(b); *see also United*

*States v. Gibbs*, 904 F.2d 52, 56 (D.C. Cir. 1990) ("This court . . . has repeatedly declared that

joint trials may be preferred, given the heavy and increasing criminal case load in our courts.");

*United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989), *cert. denied* 493 U.S. 1062 (1990)

("In general, we strike a balance in favor of joint trials."); *United States v. Gray*, 173 F. Supp. 2d 1, 5 (D.D.C. 2001) (Lamberth, J.) ("[J]oint trials are the *preferred* method when multiple defendants are connected by a single alleged conspiracy."); *United States v. Edelin*, 118 F. Supp. 2d 36, 39-40 (D.D.C. 2000) (Lamberth, J.) ("Joinder of conspiracy charges and defendants is preferred in this Circuit and in other Circuits.").

Joinder, however, is not always proper. If joinder would unfairly prejudice any of the parties involved, then "the court may order an election of separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed. R. Crim. P. 14(a); *see Zafiro*, 506 U.S. at 538. Prejudice, in this context, has been defined as "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

The Government submits that in the instant case, the evidence presented will be either identical or so substantially related as to each co-defendant and will be easily compartmentalized such that the goals of joint trials can be achieved without injury to the rights of any individual defendant. Relevant caselaw directly supports this position. The D.C. Circuit has emphasized that severance is not the favored method for providing relief to an aggrieved defendant: "Severance is due only if the evidence against one's co-defendants is 'far more damaging' than the evidence facing the accused." *Gibbs*, 904 F.2d at 56; *see also Zafiro*, 506 U.S. at 538-539. This court has held that "[s]everance is used if other methods of avoiding prejudice are inadequate. Severance is not warranted in every case where there is some risk of prejudice." *Edelin*, 118 F. Supp. 2d at 42; *see also United States v. Halliman*, 923 F.2d 873 (D.C. Cir. 1991) ("A denial of a motion to sever is not an abuse of discretion merely because a defendant might

have a better chance of acquittal if tried separately." (internal quotations omitted)). On the contrary, the defendant must meet a "heavy burden" of demonstrating that severance–rather than a less drastic remedy–is necessary in order to achieve a fair trial. *See Gray*, 173 F. Supp. 2d at 7.

The D.C. Circuit has addressed these preferred, less severe methods for reducing the risk of prejudice against one of several co-defendants. Such methods should always be applied to any potentially prejudicial situation before severance is granted. *See Zafiro*, 506 U.S. at 539; *Halliman*, 923 F.2d at 884; *Gray*, 173 F. Supp. 2d at 7; *Edelin*, 118 F. Supp. 2d at 42. Two specific methods proposed by courts in this circuit are (1) "instructing the jury on their duties and on the evidence," *Edelin*, 118 F. Supp. 2d at 42; and (2) instituting separate juries for separate defendants, *Gray*, 173 F. Supp. 2d at 7. The second of these methods is rarely used and applies only in extreme and "'relatively uncomplicated'" circumstances because "there are recognized risks and dangers that attend a two-jury trial." *Gray*, 173 F. Supp. 2d at 7. The first method, however, is widely employed, and the Supreme Court and courts in this Circuit have held that specific and effective jury instructions are almost always sufficient to ensure that a defendant will not be prejudiced at trial. *Halliman*, 923 F.2d at 884 (holding that a district court's limiting instructions to the jury were sufficient to ensure that the jury fairly reached a verdict without prejudicing either co-defendant); *Edelin*, 118 F. Supp. 2d at 42 (citing *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)). Noting that "jurors are presumed to be able to follow the instructions of the court," courts in this circuit are confident that jurors can and will distinguish the evidence related to one defendant from that related to another. *Edelin*, 118 F. Supp. 2d at 42. The *Gray* court put it succinctly: "[c]urative instructions are the preferred method of preventing prejudice to defendants. . . . [P]roper jury voir dire and curative instructions may be used to cure *any*

-7-

*possibility for prejudice or jury confusion in all but the most extreme cases.*"  173 F. Supp. 2d at

7, 11 (emphasis added).

The defendants' arguments here center on alleged prejudicial spillover caused by the

introduction of evidence against their co-defendants that will be more weighty than the evidence

introduced against them individually.  "The key to determining whether there should be a

severance of defendants or offenses is whether or not the jury would be able to compartmentalize

the evidence as it applies to different defendants and offenses."  *Edelin*, 118 F. Supp. 2d at 44;

*Halliman*, 923 F.2d at 884 (quoting *United States v. Hernandez*, 780 F.2d 113, 119 (D.C. Cir.

1986)) ("'[T]he critical determination [where severance is at issue] [is] . . . whether a jury could

reasonably compartmentalize the evidence introduced against each individual co-defendant.'").

In interpreting this standard, courts in the D.C. Circuit have been clear that defendants

moving to sever on disparity of evidence grounds face an extremely heavy burden in proving

actionable prejudice at a joint trial.  The D.C. Court of Appeals has even directly conceded that

in balancing considerations of judicial administration, "some amount of prejudice will be

permitted in favor of judicial economy and the concomitant expedition of cases."  *Carpenter v.

United States*, 430 A.2d 496, 501 (D.C. 1981).

In conspiracy cases in particular, "there are a different quanta of evidence against various

defendants.  There will also be a disparity in the alleged roles of the defendants. . . . Severance is

not appropriate merely because some co-conspirators were more active in the conspiracy, nor

because some co-conspirators played a more central role."  *Edelin*, 118 F. Supp. 2d at 43.

Multiple-defendant conspiracy trials necessitate the introduction of disparate evidence: "where

conspiracy is a dominant element and the Government must prove agreement among several co-

defendants, joinder is presumed despite the fact that the evidence may show that some defendants

were 'kingpins' and others were less active." *Gray*, 173 F. Supp 2d at 10-11. The *Edelin* court

stressed that in conspiracy trials, where the Government must show that there was agreement

between the co-defendants, "[i]t would be unnecessarily cumulative and burdensome to have the

government produce the same witnesses and evidence for multiple trials." 118 F. Supp. 2d at 43.

*Edelin* and *Gray* counsel that "a showing that there is more evidence against one defendant, that

there are more charges against one defendant, or that the evidence is stronger against one

defendant than against others is insufficient to prevail on a demand for severance." *Gray*, 173 F.

Supp. 2d at 10. The touchstone is that "[w]here virtually all the evidence adduced at trial

concerns a common course of conduct during one transaction or event . . . severance need not be

granted." *Gibbs*, 904 F.2d at 56.

 The *Gray* case illustrates the extent of disparity in charges against co-defendants that can

be tolerated without prejudicing any individual co-defendant. Seventeen co-defendants were

charged in a 158-count indictment with a litany of crimes of widely varying seriousness.[1] *Gray*,

173 F. Supp. 2d at 4-5. Ten of the seventeen co-defendants moved for severance. *Id.* at 11-15.

---

 [1] The charges in *Gray* were: (1) Conspiracy to Distribute and Posses with Intent to
Distribute Five Kilograms or More of Cocaine, Fifty Grams or More of Cocaine Base, and one
Kilogram or More of Heroin, and Marijuana; . . . (2) Conspiracy to Participate in a Racketeer
Influenced Corrupt Organization; . . . (3) continuing criminal enterprise; (4) first-degree murder
while armed and aiding and abetting; (5) continuing criminal enterprise murder and aiding and
abetting; (6) assault with intent to murder while armed and aiding and abetting; (7) tampering
with a witness or informant by killing; (8) violent crime in aid of racketeering activity and aiding
and abetting; (9) use of interstate commerce facilities in the commission of murder-for-hire; (10)
distribution of cocaine base and heroin and aiding and abetting; (11) unlawful possession with
intent to distribute cocaine base, cocaine, and heroin, and aiding and abetting; (12) illegal use of
a firearm; and (13) unlawful use of a communication facility. The defendants are alleged to have
caused the deaths of thirty-one individuals. . . . In addition, the defendants are alleged to have
committed eleven attempted murders. 173 F. Supp. 2d at 4-5 (numbering added)

None of the ten defendants who moved for severance was charged with all the crimes listed in the indictment. *See id.* Furthermore, although charged with various lesser crimes, one of the movants was not charged with first-degree murder, unlike the other nine movants. *Id.* at 14. Despite each co-defendants' contention that a large disparity in evidence existed with respect to his other co-defendants, this court denied all ten motions to sever, holding that the standard for severance was not met because "none of the defendants has made a valid claim of prejudice based on disparity of the evidence." *Id.* at 15. To require severance, "there must be great disparity in evidence, and the disparity must create a viable possibility that the jury, even with the aid of curative instructions and appropriate voir dire, will be unable to compartmentalize the evidence between defendants or will be impeded in their duty to render a fair assessment of guilt or innocence." *Id.*

In *United States v. Perholtz*, a predecessor to *Gray*, the court similarly held that "there is no rule that requires all defendants in [a conspiracy] to be equally involved before they may be tried together." 657 F. Supp. 603, 606 (D.D.C. 1986). The *Perholtz* court insisted upon the fact that so long as there is "ample direct evidence of [a co-defendant's] active participation" in the conspiracy, then it is not important whether such participation is equal in weight to that of his co-defendants. *Id.* As several other courts have also held, the prevailing standard for determining if prejudice exists is only whether "the jury can readily isolate and separately consider the proof of each defendant's knowing and willful participation in the alleged scheme." *Id.*

The same principles apply where a defendant contends that evidence of "other crimes" brought against his co-defendant(s) in accordance with Rule 404(b) is unfairly prejudicial to him. Simply because certain evidence may be classified as Rule 404(b) evidence does not mean that it

-10-

is distinguishable from other types of evidence that, if the trials were conducted separately, could

be admitted against one defendant but not against another. The policy favoring joint trials often

leads to the introduction of certain evidence that might not be admissible at separate trials,

including Rule 404(b) evidence. The D.C. Circuit's holding in *Manner* is instructive. In

*Manner*, one co-defendant moved for severance on the grounds that evidence of another crime

committed by his co-defendant would be highly prejudicial to him. This circuit rejected his

claim, holding that "the case brought by the prosecution against [the two co-defendants]

'require[d] presentation of much of the same evidence, testimony of the same witnesses, and

involve[d] two defendants who are charged, *inter alia*, with participating in the same illegal

acts.'" *Manner*, 887 F.2d at 325 (quoting *United States v. Sutton*, 801 F.2d 1346, 1365 (D.C.

Cir. 1986)). Given the facts of the case and the court's strong preference for joint trials of

defendants indicted together, the *Manner* court concluded that effective jury instructions were

more than sufficient to ensure a fair trial and protect against the possibility that a jury might

impute the Rule 404(b) evidence to the wrong defendant(s). *Id.*

     In the instant case, Mr. Straker, Mr. Sealey, and Mr. Pierre fail to meet their burden of

demonstrating that a jury, subjected to careful voir dire and armed with effective jury

instructions, would be unable to compartmentalize the evidence as to each defendant. As to Mr.

Straker's, Mr. Sealey's, and Mr. Pierre's contentions that (1) the weight of the evidence against

them relating to the kidnapping of Balram Maharaj is much greater with respect to their co-

defendants; (2) the Rule 404(b) evidence of "other crimes" allegedly committed by other co-

defendants is unfairly prejudicial to them; and (3) co-defendants in a conspiracy trial are naturally

in an uncomfortable and incriminating situation, the Government submits that each of the three

-11-

defendants fails to demonstrate that the admission of such evidence will unfairly prejudice him. Mr. Straker offers that prejudicial spillover may deprive a defendant of a fair trial, but he does not point to any specific unfairness to him. [*See* Straker Motion at 6.] Mr. Sealey offers an even less persuasive argument, positing that a joint trial "has the potential of and likely would be" prejudicial without actually demonstrating how it would be so in his case. [*See* Sealey Motion at 6.] And Mr. Pierre also provides no specific argument of unfair prejudice to him. [*See* Pierre Motion at 4.] Indeed, none of these three co-defendants actually demonstrates (1) that such a great disparity in evidence exists; or (2) even if such a disparity did exist, that it could not be cured through effective jury instructions and voir dire. Furthermore, like the defendant in *Manner*, Mr. Straker, Mr. Sealey, and Mr. Pierre are three of multiple defendants involved in a conspiracy trial requiring that much of the same evidence be introduced against all co-defendants. This circumstance, coupled with the universal preference for joint trials, weighs heavily against severance of these similarly situated defendants.

Finally, despite these three co-defendants' attempts to diminish their own roles, the fact remains that they were all active contributors to the torturous conditions that led to Balram Maharaj's brutal death. They were as much a part of the conspiracy as any of their other co-defendants; therefore, given the standard established by this court in *Perholtz*, all evidence related to Balram Maharaj's death is not only admissible but also highly determinative of Mr. Straker's, Mr. Sealey's, and Mr. Pierre's culpability.[2] *See Perholtz*, 657 F. Supp. at 606 (holding

---

[2] Moreover, because this conspiracy under 18 U.S.C. §1203(a) is a "non-overt act" conspiracy, once these defendants joined the conspiracy, legally they were unable to withdraw from it, as they could from a typical overt act conspiracy. *Hyde v. United States*, 225 U.S. 347, 359 (1912)(withdrawal from non-overt act conspiracy after the agreement has been entered is not an affirmative defense). As a result they remained responsible for the entirety of the ensuing

that defendants need not have identical or equal roles in a conspiracy to be tried together).
Provided with the delineation of each individual co-defendant's participation in the conspiracy,
the jury will be able to compartmentalize the evidence offered..

Consequently, since Mr. Straker, Mr. Sealey, and Mr. Pierre do not demonstrate that a
jury would be unable to compartmentalize the evidence against each of them or that they will
suffer unfair prejudice, and since joinder is favored in conspiracy cases involving a single set of
facts, as does this case, severance is not a proper remedy.

**Allegations Related to the Introduction of Co-Defendants' Statements**

The government recognizes that admission of certain co-defendants' statements raises
concerns under *Bruton v. United States*, 391 U.S. 123 (1968). Any such concerns, however, may
be cured by redaction and appropriate jury instructions, far less drastic alternatives than
severance. As to Mr. Pierre's contentions that the statements made by Mr. Nixon are facially
incriminatory, the Government submits that Mr. Nixon's statement will not be offered at trial as
part of the government's case-in-chief. Mr. Pierre's objections to the specific statement is,
therefore, moot. This exclusion notwithstanding, the Government at present plans to seek to
introduce at trial (1) Mr. Sealey's statement to the Trinidadian authorities, (2) Mr. Sealey's
statement to the FBI, and (3) Mr. Straker's statement to the FBI.[3] At such time, the Government
will address the *Bruton* issue by substituting terms such as "a person" or "someone else"
wherever any references to Mr. Pierre or his pseudonyms occur. As set forth below, this practice

---

events.

[3] *See generally* Government's Opposition to Defendants' Motions to Suppress
Statements, filed August 8, 2008 (further description of statements).

has been approved by the Supreme Court and Courts of Appeal and should therefore be authorized in this case as well.

The introduction of a non-testifying co-defendant's confession does not violate the Confrontation Clause if the statement is redacted to exclude explicit or obvious reference to the defendant and the jury is given a proper limiting instruction. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). In *Richardson*, the Supreme Court addressed the requirements of the Confrontation Clause when the non-testifying co-defendant's statement is neutral on its face. After reiterating the general rule that "a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant [for purposes of Confrontation Clause analysis] if the jury is instructed to consider that testimony only against a codefendant," the *Richardson* Court acknowledged that *Bruton* "recognized a narrow exception to this principle." *Id.* at 206-207. The *Richardson* Court then held that co-defendants' statements that have been redacted to "omit all reference" to a defendant (indeed, that omit all reference to the defendant's very existence and participation in the crime)–considered as a class–fall outside the scope of the *Bruton* exception. *Id.* at 211. Significantly, the *Richardson* Court also ruled that the fact that the facially-neutral statement incriminated the defendant when linked with other evidence did not pose a Confrontation Clause problem. *Id.* at 208.

In *Gray v. Maryland*, 523 U.S. 185 (1998), the Supreme Court clarified the meaning of *Richardson* and *Bruton*. In *Gray*, Gray and Bell were jointly tried for murder. Bell had confessed, stating that he, Gray, and another accomplice (who had since died) had killed the victim. The trial court admitted Bell's confession after ordering it redacted by substituting the words "deleted" or "deletion" for Gray's or the other accomplice's name or, when submitted in writing, by

-14-

omitting their names but leaving in their place blank white spaces separated by commas. Bell did

not testify. In holding that Bell's statement violated *Bruton*, *id.* at 197, the *Gray* Court explained

that "[r]edactions that simply replace a name with an obvious blank space or a word such as

'deleted' or a symbol or other similarly obvious indications of alteration ... leave statements that,

considered as a class, so closely resemble *Bruton*'s unredacted statements that ... the law must

require the same result." *Gray*, 523 U.S. at 192; *accord id.* at 195 ("[W]e believe that, considered

as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a

symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton*'s

unredacted confessions as to warrant the same legal results."). The Court relied heavily on the

fact that deletions from Bell's statement were "obvious," repeatedly mentioning the fact in its

short opinion. The Court emphasized that "[t]he blank space in an obviously redacted confession

... points directly to the defendant," distinguishing it from *Richardson*, in which other evidence

was necessary from which to infer the connection between statement and defendant. *Id.* at 194,

195-96.

More broadly, *Richardson* and *Gray* indicate that the Supreme Court has adopted a

"categorical" -- rather than "contextual" -- approach to Confrontation Clause cases. As noted, the

*Richardson* Court began its analysis by reciting the general rule that "a witness whose testimony

is introduced at a joint trial is not considered to be a witness 'against' a defendant [for purposes of

Confrontation Clause analysis] if the jury is instructed to consider that testimony only against a

codefendant." *Richardson*, 481 U.S. at 206. *Bruton* created a narrow, categorical exception to

this principle for facially incriminating confessions by nontestifying co-defendants that expressly

implicate the defendant as an accomplice. *See Gray*, 523 U.S. at 194; *Richardson*, 481 U.S. at

-15-

207-08. Significantly, the *Gray* Court neither recited nor discussed the trial evidence. Instead, the Court merely attached a copy of Bell's redacted confession to its opinion and analyzed the statement standing alone. Use of this analytical framework buttresses the notion that the key inquiry in a *Bruton* analysis is whether a nontestifying co-defendant's statement, viewed alone, falls within an identifiable category considered facially to incriminate -- without reference to whether the statement incriminates when considered in the context of the trial evidence. Indeed, the trial evidence appears to be irrelevant to the inquiry.

This bright-line, categorical approach reflects the Supreme Court's efforts and express desire to accommodate the government's right to use a co-defendant's statements at a joint trial and the defendant's rights under the Confrontation Clause, while permitting prosecutors and trial courts to "easily predict," prior to the trial and before "the introduction of all the evidence, whether or not *Bruton* [would] bar use of the [co-defendant's] confession." *Gray*, 523 U.S. at 197; *accord id.* at 196 ("The inferences at issue here involve statements ... which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial.").

A number of courts have applied *Gray* in this manner. In the wake of *Gray*, the substitution of a defendant's name in a co-defendant's confession with a neutral pronoun or phrase passes muster under *Bruton* as long as any incrimination of the defendant comes only by inference from evidence extrinsic to the redacted statement and a limiting instruction is given. *See, e.g., United States v. Vejar-Urias*, 165 F.3d 337, 340 (5th Cir. 1999) ("[W]here a defendant's name is replaced with a neutral pronoun, as long as identification of the defendant is clear or inculpatory only by reference to evidence other than the redacted confession, and a limiting

-16-

instruction is given to the jury, there is no Bruton violation."); *United States v. Verduzco-Martinez*, 186 F.3d 1208, 1213-14 (10th Cir. 1999) (use of "another person," in co-defendant's statement acceptable under *Bruton* and *Gray*); *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999) (use of phrases "another person" or "another individual" in co-defendants' statements is acceptable), *cert. denied*, 528 U.S. 1177 (2000); *United States v. Edwards*, 159 F.3d 1117, 1125-26 (8th Cir. 1998) (use of neutral pronouns such as "we," "they," "someone," and "others" in redacted statements of co-defendants was acceptable), *cert. denied*, 528 U.S. 825 (1999).

While the District of Columbia Circuit has not directly addressed this issue since *Gray*,[4] dicta from several relevant cases strongly suggest that the D.C. Circuit's application of *Gray* would permit the introduction of Mr. Sealey's redacted confession. The D.C. Circuit's decision in *United States v. Wilson* indicates that the Court of Appeals has rejected the doctrine of contextual analysis or inferential incrimination: "the Court in *Gray* revisited *Bruton* and *Richardson* to clarify that statements that incriminate only inferentially are outside the scope of Bruton." *United States v. Wilson*, 160 F.3d 732, 740 n.5 (D.C. Cir. 1998), *cert. denied*, 528 U.S. 828 (1999); *see also United States v. Gilliam*, 167 F.3d 628, 636 (D.C. Cir. 1999) ("Insofar as [defendant] also contends that he was denied his Sixth Amendment right to cross-examine [non-testifying co-defendant] about his statement to [another co-defendant], his claim fails because [the non-testifying co-defendant's] statements did not expressly implicate him.").

---

[4] Before *Gray* was decided, the D.C. Circuit applied an "inevitable association" analysis to determine whether a proffered statement passed muster under *Bruton*. *See generally United States v. Applewhite*, 72 F.3d 140 (D.C. Cir. 1995); *United States v. Washington*, 952 F.2d 1402 (D.C. Cir. 1991); and *United States v. Serio*, 401 F.2d 989 (D.C. Cir. 1968).

Finally, the Supreme Court's recent decision in *Crawford v. Washington*, 541 U.S. 36 (2004), does not alter this analysis. In *Crawford,* the Supreme Court further interpreted the Confrontation Clause with respect to the admission of "testimonial" hearsay admitted against a defendant. While the Court did not provide a comprehensive list of all statements that were to be considered "testimonial," it did make clear that the term applied to statements given during police interrogations. *Id.* at 68. The rule as to the admission of testimonial statements had previously been established in *Ohio v. Roberts*, 448 U.S. 56 (1980), which broadly held that certain "testimonial" hearsay statements might be admissible if they fell into a "firmly rooted exception" to the hearsay rule or if there were other specific guarantees that the statements could be trusted. *Crawford*, 541 U.S. at 60. The Court in *Crawford* adopted a more bright-line rule, holding that a co-defendant must have an opportunity to cross-examine any and all other co-defendants whose "testimonial" hearsay statements were admitted into evidence. *Id.* at 68-69.

*Crawford*, however, is not implicated in the instant case with respect to the admission of Mr. Sealey's confession. The *Crawford* holding applied only to testimonial hearsay statements made by one co-defendant but admitted against co-defendants other than the declarant. On the contrary, the instant case involves the possible admission of a partially redacted statement given by Mr. Sealey that will only implicate Mr. Sealey himself. *Crawford* thus has limited bearing on the instant case.

Applying these precedents to the case at bar, it is evident that Mr. Pierre fails to meet the burden of demonstrating that his Sixth Amendment rights will be violated by the introduction into evidence of Mr. Sealey's statements to the Trinidadian police and to the FBI, or Mr. Straker's statement to the FBI. There exists no risk that any co-defendant statements introduced

-18-

into evidence will be used against Mr. Pierre–or any other co-defendant, for that matter. Indeed, all such statements will be redacted–in accordance with *Bruton* and *Richardson*–to eliminate any and all references to the other co-defendants' participation in the charged offenses. Furthermore, the Government is confident that this court will supply limiting instructions to the jury to ensure that no part of Mr. Sealey's statement is interpreted to implicate anyone besides the confessing declarant himself. Finally, even Mr. Pierre himself recognizes in his motion that a partial redaction of his co-defendants' statements in accordance with *Bruton* and *Richardson* would be sufficient to address his concerns. [*See* Pierre Motion at 4; Pierre Supplemental Motion at 3.] Given the universal preference for joint trials in conspiracy cases and the redaction of any reference to co-defendants besides the declarant himself, the Government's proposed "Brutonization" of the statements in question–and not severance–is the proper remedy to cure any potential Sixth Amendment claims.

Because Mr. Straker, Mr. Sealey, and Mr. Pierre have failed to meet their burdens of demonstrating (1) that a properly chosen jury, provided with effective jury instructions, would actually be unable to compartmentalize the evidence against each of the co-defendants; or (2) that "a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro*, 506 U.S. at 534, they have also failed to establish that circumstances exist sufficient to warrant severance of their trials from that of their co-defendants for reasons related to a disparity in evidence.

Because Mr. Pierre has failed to demonstrate that the redaction of any and all references to his name or pseudonyms from any co-defendants' statements that the Government may introduce at trial would be insufficient to cure any potential Sixth Amendment concerns, he has

failed to establish that circumstances exist sufficient to warrant severance of his trial from that of his co-defendants for reasons related to a violation of the Confrontation Clause.

For all these reasons, defendant Anderson Straker's First Motion to Sever Defendants, defendant Christopher Sealey's Motion to Sever Defendants, and defendant Wayne Pierre's Motion to Sever Defendant and Supplemental Motion to Sever Defendant are without merit and should be denied.

WHEREFORE, for each of the independent reasons set forth above, Defendant Anderson Straker's First Motion For Severance of Defendants should be, in all things, denied.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney


/S/

By:    _____

JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C.  20530
(202) 514-5776


BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C.  20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 8th day of August, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

_____/s/_____

Bruce R. Hegyi